**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Kermit Ty Poulson, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER OF PARTIAL DISMISSAL** |
| | ) | **AND FOR ORDER LEAVE TO AMEND** |
| vs. | ) | **ADA CLAIM** |
| | ) | |
| North Dakota Dept of Human Services, | ) | |
| Julie  Hoffman, | ) | |
| | ) | Case No. 1:21-cv-162 |
| Defendants. | ) | |

Kermit Ty Poulson ("Poulson"), appearing pro se, has been granted leave to proceed in forma pauperis in the above-captioned case.  Doc. No. 4.  The matter is now before the court for screening pursuant to 28 U.S.C. § 1915(e)(2). For the reasons that follow, the court dismisses his complaint in part and grants him leave to amend his Americans with Disability's Act claim.

I.     **BACKGROUND**

A.     **Procedural History**

Poulson initiated this action pro se on August 5, 2021, with the submission of an application to proceed in forma pauperis and a complaint.  Doc. Nos.  1, 6.  Attached to the complaint are: (1) a copy of  the revised Uniform Adoption Act, codified at N.D.C.C. 14-15; and (2) a copy of the findings and  recommendation issued by Magistrate Judge Jeremiah Lynch in a case that Poulson had previously filed in the District of Montana. Doc. No. 6-1, 6-2; see also Poulson v. Bullock, No. CV 17-140-M-DLC-JCL, 2017 WL 5162801 (D. Mont. Nov. 7, 2017) (Order, Findings and Recommendation).

On August 27, 2021, plaintiff filed what the court construed as a motion for leave to file an amended complaint.  Doc. No. 9.  On September 24, 2021, the court issued an order granting the

motion and instructing plaintiff to file his amended complaint by October 18, 2021.  Doc. No. 11.
More than five months have since passed and plaintiff has yet to file an amended complaint.

B.    Poulson's "Montana case"

The complaint filed by Poulson to initiate the above-captioned in this district contains
references to the case that Poulson initiated in the District of Montana.  For the sake of context and
clarity, this court will briefly summarized what transpired in Poulson's Montana case.[1]

Poulson filed suit in the District of Montana on September 28, 2021, claiming that numerous
defendants violated various constitutional rights of his, that his rights under the Americans with
Disabilities Act ("ADA") had been violated, that he had been subjected to libel and slander by some
of the defendants, and that one of the defendants had stolen his hand cycle.  Poulson v. Bullock, No.
CV 17-140-M-DLC-JCL, 2017 WL 5162801 at *1 (D. Mont. Nov. 7, 2017).  When reviewing
Poulson's complaint pursuant to § 1915(e)(2), Judge Lynch initially observed:

> Poulson claims have their genesis in two legal proceedings prosecuted against him
> in the Montana Eleventh Judicial District, Flathead County.  The first was a civil
> proceeding . . . which culminated in the termination of Poulson's parental rights with
> respect to minor child M.M.F . . . .  The second was a criminal proceeding which
> culminated in Poulson entering a guilty plea on August 9, 2012, to felon criminal
> possession of dangerous drugs . . . .  Poulson is not currently in custody on that
> conviction.

Id.  He then went on to make the following findings. First, Poulson's state tort and federal ADA
claims were barred by statutes of limitations.  Id. at ** 2-3.  Alternatively, defendants were

---

[1]  This court may take judicial notice of Poulson's litigation history as it appears to relate to the claims he is
asserting in the above-captioned action. Jacob v. Cotton, No. 4:20CV3107, 2021 WL 130953, at *1 (D. Neb. Jan. 14,
2021) (citing Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005), Conforti v. United States, 74 F.3d 838, 840
(8th Cir. 1996), and United States v. Jackson, 640 F.2d 614, 617 (8th Cir. 1981), for the proposition that a court can sua
sponte take judicial notice of its own records and files, facts which are part of its public records and proceedings in other
courts if they relate directly to the matters at issue).

absolutely immune from suit as their conduct at issue was, by Poulson's own allegations, undertaken in relation to the performance of their judicial and prosecutorial duties.  Id. at 3.  Second, the Rooker-Feldman doctrine barred Poulson's challenge to the termination of his parental rights.  Id. Third, Poulson had failed to assert any cognizable constitutional claims against defendants.  Id. at *4.  Fourth, Poulson has failed to assert a facially cognizable claim in regards to the alleged theft of his hand cycle.  Id.  He granted Poulson leave to amend his claim for theft of his hand cycle but recommended that the court dismiss the rest of Poulson's claims.  (Id.).

Poulson did not amend his claim or otherwise object to Judge Lynch's recommendation. Poulson v. Bullock, No. CV 17-140-M-DLC-JCL, 2018 WL 297573, at *1 (D. Mont. Jan. 4, 2018). Consequently, the court adopted Judge Lynch's findings and recommendation in full and dismissed all of Poulson's claims against all defendants.  Id.

### C.      Poulson's "North Dakota case"

As noted above, Poulson filed a complaint with this court on August 5, 2021.  As best as the court can discern, he is contesting the adoption of his biological daughter.  In so doing, he asserts that Julie Hoffman refused to recognize that the State of Montana illegally terminated his parental rights with respect to his daughter, performed an illegal adoption, refused to provide him information regarding the adoption, would not allow him to let him speak with his daughter or the family that adopted her, and said demeaning things about him in violation of the Americans with Disabilities Act.  He seeks: (1) the court's assistance on obtaining a line of communication with his daughter's adoptive family; (2) an award of $50,000 for the alleged violation of his rights under the ADA; and (3) a letter of apology from Julie Hoffman.

On motion by Poulson, the court issued an order on September 24, 2021, giving him until

October 18, 2021, to file an amended complaint.  Poulson has yet to file a amended complaint despite having been afforded ample opportunity to do so.  Consequently, the court shall proceed with its review of the complaint that he filed on August 5, 2021.

## II.     STANDARDS GOVERNING § 1915(e)(2) REVIEW

Title 28 of the United States Code, Section  § 1915(e)(2) empowers the court to dismiss an action filed *in forma pauperis* if it concludes the pleadings are frivolous or malicious, fail  to state a claim, or seek monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2).  "Dismissals [under 28 U.S.C. § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." Neitzke v. Williams, 490 U.S. 319, 324 (1989); see also Mallard v. U.S. Dist. Ct. S.D. Iowa, 490 U.S. 296, 307–308 (1989) ("Section 1915(d) [now § 1915e(2)(B)(I)], for example, authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision.").  "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." Denton v. Hernandez, 504 U.S. 25, 33 (1992).

In applying § 1915(e)(2), the court must give the *pro se* complaint the benefit of a liberal construction.  See, e.g., Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015) ("When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.") (internal quotation marks omitted).  This does not mean,

however, that the *pro se* litigant is excused from satisfying the plausibility standard established in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 580 (2007) ("Twombly") and further amplified by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 678-84 (2009) ("Iqbal").   See, e.g., Story v. Foote, 782 F.3d 968, 969 (8th Cir. 2015);   Hughes v. Banks, 20 Fed. App'x  960, 2008 WL 4065874 at *1 (8th Cir. 2008) (unpublished opinion) (even a pro se complaint must allege sufficient facts to support claims advanced).

## III.   DISCUSSION

### A.   Claim Regarding Adoption/Custody Proceedings

If it was Poulson's intent to challenge in the instant action the termination of his parental rights in Montana he will have to look elsewhere.   The federal court in Montana refused to entertain these claims, citing the Rooker-Feldman doctrine.   This court takes the same tack.

Insofar as Poulson takes issue with the  validity of the adoption of his daughter and Julie Hoffman's alleged involvement in the adoption, his claim is subject to dismissal under the Rooker-Fedman doctrine as well as the domestic relations exception to federal court jurisdiction.

Under the Rooker-Feldman doctrine, lower federal courts lack subject matter jurisdiction over challenges to state court judgments, a review limited to the province of the United States Supreme Court.   Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir. 1990) (noting "[f]ederal courts, with the exception of the United States Supreme Court, do not possess appellate jurisdiction over state court proceedings.").   This doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting district court review and rejection of those judgments."   Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, (2005).   These types of suits are "out of

5

bounds" in federal court and warrant dismissal "for want of subject-matter jurisdiction." Id. at 283-84.  The doctrine not only precludes direct assailments of state court judgments, but also prohibits collateral attacks by way of federal claims inextricably intertwined with the state court judgments.  Prince v. Arkansas Bd. of Examiners in Psychology, 380 F.3d 337, 341 (8th Cir. 2004).  Federal claims are inextricably intertwined "with the state court judgment if they succeed only to the extent that the state court wrongly decided the issue before it."  Id. (internal quotations and alterations omitted).  This prevents federal courts from considering actions that would "directly nullify the final judgment of the state court."  Id. (internal alterations and quotations omitted).  The type of relief sought may be indicative of whether a federal claim is simply an attempt to disturb the state court judgment.  Id

More particular to family law matters, federal courts have developed what has come to be known as the domestic relations exception.  The "domestic relations exception, first articulated in Barber v. Barber, 62 U.S. (1 How.) 582, 584, 16 L.Ed. 226 (1859), divests the federal courts of jurisdiction over any action for which the subject is a divorce, allowance of alimony, or child custody."  Kahn v. Kahn, 21 F.3d 859, 861 (8th Cir. 1994).  "[W]hen a cause of action closely relates to but does not precisely fit into the contours of an action for divorce, alimony or child custody, federal courts generally will abstain from exercising jurisdiction."  Id.  This doctrine precludes federal suit involving "a remedy which is essentially domestic—where, in addressing the same conduct involved in a state domestic proceeding, the effect of a remedy in the federal suit is to modify, nullify, or predetermine the domestic ruling of the state proceeding."  Wallace v. Wallace, 736 F.3d 764, 767 (8th Cir. 2013).  No matter how styled, the domestic relations exception disallows domestic claims "cloaked in the 'trappings' of another type of" a federal claim.  Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) (quoting Congleton v. Holy Cross Child Placement

Agency, Inc., 919 F.2d 1077, 1078–79 (5th Cir.1990)).

Here, Poulson's claims they are either directly related to or so interwoven with state child custody proceedings that subject matter jurisdiction does not lie in this court. A careful reading of Poulson's allegations illustrates that his issues with Julie Hoffman have arisen as a direct result of his daughter's custody case. Poulson has given no indication that his claim could not have received a full and fair consideration in state court. The state court, where the custody proceedings were held, would be better equipped to handle the issues raised by Poulson. See e.g., Jones v. Johnson, No. 4:19-CV-3058-RLW, 2020 WL 587877, at *2 (E.D. Mo. Feb. 6, 2020) (dismissing on initial review pursuant to the domestic relations exception a plaintiff's claims against Missouri Social Services and others for their participation in what plaintiff characterized as an illegal adoption). The court shall next address Poulson's ADA claim.

**B.     ADA claim**

The basis of Poulson's ADA claim is that Julie Hoffman rebuffed his requests to contest or appeal the adoption and made a derogatory statement or slur about his intellect and physical limitations.

Title II of the ADA, entitled "Public Services," provides, in relevant part: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II defines the term "qualified individual with a disability" as "an individual with a disability who ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Even giving the pleadings the most liberal of constructions and benefit of all doubt, the court

7

finds that Poulson has failed to assert an ADA claim that survives initial review.  Poulson obviously invokes the ADA.  However, he does not allege that he is a qualified individual with a disability or that he was denied benefits, programs, or services on account of his disability.  Consequently, Poulson cannot proceed with his ADA claim as it presently drafted.  Rather than dismiss this claim outright, the court shall first afford Poulson an opportunity to amend it.

## III.   CONCLUSION

The court **GRANTS** Poulson leave to amend his ADA claim.  Poulson shall have until April 25, 2022, to file an amended complaint that addresses the pleading deficiencies discussed above and otherwise articulates the basis for his ADA claim.  Failure to file an amended complaint by April 25, 2022, may result in the summary dismissal of his ADA claim.  The remainder of Poulson's claims are dismissed for lack of jurisdiction pursuant to the Rooker-Feldoman doctrine the domestic relations exception.

**IT IS SO ORDERED.**

Dated this 28th day of March, 2022.

/s/ Clare R. Hochhlater
Clare R. Hochhalter, Magistrate Judge
United States District Court

8